UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SHARON N. BROOKS, | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| vs. | ] 2:10-CV-2697-LSC |
| | ] |
| MICHAEL J. ASTRUE, | ] |
| Commissioner, | ] |
| Social Security Administration, | ] |
| | ] |
| Defendant. | ] |

MEMORANDUM OF OPINION

I.  Introduction

The plaintiff, Sharon N. Brooks, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). Ms. Brooks timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Brooks was forty-three years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a twelfth grade education, as well as training in word processing. (Tr. at 55, 59.) Her past work experiences include employment

as a dog groomer and kennel worker. (Tr. at 62.) Ms. Brooks claims that she became disabled on September 28, 2006, due to degenerative arthritis and constant pain in her neck and shoulders from various spinal conditions. (Tr. at 91.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id.* If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. § 404.1520(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. § 404.1520(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments fall within this category, he or she

will be found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. § 404.1520(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Ms. Brooks has not been under a disability within the meaning of the Social Security Act from September 28, 2006 through the date of his decision. (Tr. at 22.) He further determined that Ms. Brooks has not engaged in substantial gainful activity since the alleged onset of her disability. (*Id.*) According to the ALJ, Plaintiff's spondylosis, degenerative joint disease, cervical degenerative disc disease, cervical dystonia,

possible carpal tunnel syndrome, pain disorder associated with psychological factors and general medical condition, depressive disorder, anxiety disorder, and alcohol abuse are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, he found that these impairments neither meet nor medically equal any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. (Tr. at 23.) The ALJ did not find Ms. Brooks's allegations to be totally credible, and he determined that she has the following residual functional capacity:

> The claimant has the residual functional capacity to lift objects weighing up to 10 pounds, to lift objects weighing up to 20 pounds on occasion, to sit for as much as 8 hours in an 8-hour day, to stand and walk for a total of 4 hours in an 8-hour day, to take normal breaks, and to sit or stand in performance of job duties at her option. She is limited to occasional overhead reaching. She cannot engage in finger manipulation activities, such as keyboarding, for more than 5 minutes at a time. She is to have contact with the general public that is brief, infrequent, and casual. Finally, she is limited to routine, non-complex job tasks.

(Tr. at 24.)

According to the ALJ, Ms. Brooks is unable to perform any of her "past relevant work," she is a "younger individual," and she has at least a high school education, as those terms are defined by the regulations. (Tr. at 27.) He determined that Plaintiff has "no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case." (*Id.*) The ALJ found that Ms.

Brooks has the residual functional capacity to perform the requirements of representative light occupations with a sit/stand option. (Tr. at 28.) Even though Plaintiff cannot perform the full range of light work, the ALJ used Medical-Vocation Rule 201.21 as a guideline for finding that there are a significant number of jobs in the national economy that she is capable of performing, such as liner worker, table hand, machine tender, and molder of presses and wire stampers. (*Id.*)

The ALJ concluded his findings by stating that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," and that she "has not been under a 'disability,' as defined in the Social Security Act, from September 28, 2006 through the date of this decision." (Tr. at 28.)

II.   Standard of Review

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the

Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.   Discussion

Ms. Brooks alleges that the ALJ's decision should be vacated and reversed because it is not supported by substantial evidence and applicable law for one reason. (Doc. 7 at 7-8.) Plaintiff claims that the ALJ did not properly evaluate the credibility of her complaints of pain, and that the medical evidence establishes "impairments with limitations to a greater extent than determined by the ALJ." (*Id.* at 8.)

To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).

The ALJ is permitted to discredit Plaintiff's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements.").

Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting *Foote v. Chater*, 67 F.3d 1555, 1562 (11th Cir. 1995)). "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection which is "not enough to enable [this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Id.* (internal quotations omitted). In assessing credibility of Plaintiff's statements, factors in addition to objective medical evidence should be considered, which include daily activities, as well as medication and its effects. 20 C.F.R. §§ 404.1529(c)(3); *see also Macia v. Bowen*, 829 F.2d 1009, 1011 (11th Cir. 1987).

In the instant case, the ALJ found that the Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. at 25.) However, he further determined that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual function capacity assessment. (*Id.*) In making his determination, the ALJ compared Plaintiff's subjective complaints of pain to the objective medical evidence, her treatment history, and her daily activities. (Tr. at 25-27.)

In August of 2006, Ms. Brooks complained to her treating physician, Dr. Edward Kissel, that she was experiencing neck and bilateral hand pain. (Tr. at 172.) A subsequent neck X-ray showed "advanced degenerative changes in the lower lumbar spine." (Tr. at 173.) However, that X-ray also showed that "[h]ands look good." (*Id.*) Dr. Kissel noted that "elbows, hands and wrists are without stigmata of rheumatoid arthritis. There is not obvious deformity. Phalen's and reverse Phalen's tests are negative. Grip is quite good. No atrophy." (*Id.*) Dr. Kissel diagnosed Plaintiff with multilevel disc disease and mild sensory neuropathy and referred her to a neurologist, Dr. Robins Newton. (Tr. at 184.) Dr. Newton referred the Plaintiff to a neurosurgeon for her neck pain, noted that her MRI showed abnormalities, and stated that she "may benefit from seeing a rehab physician." (*Id.*) The neurosurgeon, Dr. Carter Harsh, stated, "She does not have a surgical abnormality." (Tr. at 188.) He also noted possible carpal tunnel syndrome, but remarked, "[Plaintiff] does not wish to pursue this further at this point." (*Id.*) The ALJ noted that the treatment record revealed no restrictions on work activity recommended by any of Plaintiff's treating physicians. (Tr. at 26.)

The ALJ also looked at the records from Plaintiff's consulting examiner, Dr. Carnel, which indicated that the Plaintiff was "able to get on and off the examination

table with ease . . . [and] fully bend over at the lower back," and had full range of motion in her neck. (Tr. at 201.)  Dr. Carnel's record also shows that Plaintiff can bend over at the waist, squat and get back up, although Plaintiff reports it is "somewhat difficult." (Tr. at 202.)  The ALJ considered Dr. Carnel's assessment that Plaintiff has some pain, particularly with the cervical and lumbar range of motion, but that Spurling's maneuver was negative and the muscle spasms were mild. (Tr. at 26, 203.) The ALJ found that the Plaintiff's longitudinal treatment history did not support plaintiff's subjective claims of pain. *See Arnold v. Heckler*, 732 F.2d 881, 884 (11th Cir. 1984) ("It was not inconsistent for the [ALJ] to find that [the plaintiff] suffers pain in fact and yet is not so severely impaired as to meet the stringent test for disability imposed by the Act.").

      The ALJ also considered the Plaintiff's "conservative treatment" in determining the credibility of her claims. (Tr. at 26.)  The ALJ noted that Dr. Harsh specifically did not recommend surgery. (*Id.*) While Dr. Robert Poczatek, one of Plaintiff's treating physicians, did recommend Botox injections for her cervical dystonia in March of 2007, Plaintiff declined them and continued to take prescription medication for her pain. (Tr. at 487.)  The ALJ noted that Plaintiff also declined Dr. Newton's recommendation for physical therapy, and cancelled her appointment for

a cervical epidural steroid injection. (Tr. at 26.) The ALJ stated that a person experiencing moderately severe pain on a continuous basis, "would be more likely to seek recommended treatment." (*Id.*)

Plaintiff contends the ALJ did not follow the criteria of SSR 96-7p, 1996 WL 374186.[1] (Doc. 7 at 6.) Specifically, the Plaintiff argues that the ALJ did not mention "a single medication in his decision." (*Id.* at 7.) However, the ALJ is not required to give a written explanation for every piece of evidence. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). In making his determination, the ALJ reviewed the treatment records and articulated reasons based on those records for discrediting Plaintiff's pain testimony. The ALJ noted that Plaintiff does not have side effects from her medications, has been treated conservatively for her pain, and has not been restricted from any daily activities by her physicians. (Tr. at 26.) *See French v. Massanari,* 152 F. Supp.2d 1269 (M.D. Fla 2001) (holding that the ALJ did not have a duty to inquire into allegedly disabling side effects of the claimant's pain medication since the claimant did not allege at his hearing that side effects of his medication contributed to his disability). The treatment records support the ALJ's findings that the objective medical evidence does not confirm the severity of the alleged pain.

---

[1]Available at http://www.ssa.gov/OP_Home/rulings/di/01/SSR96-07-di-01.html

Finally, the ALJ looked at the Plaintiff's daily activities to support his conclusion that the Plaintiff is not disabled. While the ALJ cannot use daily activities alone to ascertain whether a claimant is disabled, the ALJ must consider the entire record, including a claimant's activities, to make a finding on credibility.  20 CFR § 416.929(c)(3) ("Factors relevant to your symptoms, such as pain, which we will consider include: (i) Your daily activities . . . ."). The ALJ considered that the Plaintiff wakes up at 5:20 a.m. and goes into work four days a week. (Tr. at 26.) This contradicts the vocational expert's assessment that the if ALJ were to find the Plaintiff's testimony fully credible, the claimant would be precluded from performing any work due to the pain as described and limitations. (Tr. at 25.) It also indicates an ability to do other work on a sustained basis. (Tr. at 26.) The ALJ noted that the Plaintiff admits to driving, shopping some, and performing some housework, "which further strengthens her residual functional capacity and the notion that ongoing treatment will not interfere with work activity." (*Id.*)

The objective medical evidence, treatment history, and daily activities support the ALJ's conclusion that the Plaintiff' impairments did not cause disabling limitations, and instead shows that she has "demonstrated the potential to work on a sustained basis."  (Tr. at 27.)

IV.   Conclusion

Upon review of the administrative record, and considering all of Ms. Brook's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law.  A separate order will be entered.

Done this 12th day of January 2012.

_____<br>
L. SCOTT COOGLER<br>
UNITED STATES DISTRICT JUDGE<br>
167458